CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
1/27/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| BRIAN BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:25-cv-00141 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HON. CLARK A. RITCHIE, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |         United States District Judge |
| Defendants. | ) | |

Plaintiff Brian Bailey, proceeding *pro se*, filed this action against the following parties: the Honorable Clark A. Ritchie, a Virginia circuit court judge; Jennifer Brown, the guardian *ad litem* in child-custody proceedings involving Bailey's child; Alana Brown, the Director of the Division of Child Support Enforcement of the Virginia Department of Social Services ("DCSE"); Rockingham County, Virginia; and Ann Patrice Bailey, the mother of Bailey's child ("Mother"). Bailey asserts various claims under 42 U.S.C. § 1983, alleging that each Defendant has, in some way, violated his constitutional rights during child-custody and enforcement proceedings in Virginia state court.

This matter is before the court on Bailey's motion for leave to proceed *in forma pauperis*. Because the court finds that Bailey's application satisfies the necessary standard, the court will grant his motion. But after undertaking its independent duty to screen initial filings under 28 U.S.C. § 1915(e), the court will dismiss Bailey's action in its entirety.

### I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

The following facts are taken from Bailey's Complaint[1] and, at this stage, the court accepts these facts as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

This action arises from child custody proceedings concerning Bailey's minor son in the Juvenile & Domestic Relations Court ("J&DR Court") and Circuit Court of Rockingham County, Virginia. (*See generally* Compl.; ECF No. 3, Attach. 1.) Though the child-custody determination was resolved by final order of the Circuit Court in 2023, state-level visitation, child-support, and contempt proceedings are ongoing. (*See id.* ¶¶ 21–23; ECF No. 3, Attach. 1 at 1209–2524.)

Bailey, who is Black (*see* Compl. ¶ 21), alleges that, during the state-court proceedings, he has been subjected to "systematic misconduct by judicial and quasi-judicial officers, child-support enforcement officials, and collaborating private actors." (*Id.* ¶ 2.) Specifically, Bailey alleges that Mother lodged approximately 15 false criminal complaints against him. (*Id.* ¶¶ 3, 25–28.) While many of the charges have been "dismissed, *nolle prossed*, or otherwise terminated in his favor," Bailey alleges that Mother and Jennifer Brown "rely on the existence of the charges . . . to justify restrictions on [Bailey's] contact with his child and to cast doubt upon his credibility." (*Id.* ¶ 27.)

Further, Bailey alleges that Jennifer Brown has "adopted Mother's narrative without meaningful investigation, showed open hostility to [Bailey], and treated [Bailey's] efforts to

---

[1] The court also notes that voluminous state court records accompany Bailey's filings. (*See* ECF No. 3.) For brevity, the court only includes those facts from the state-court proceedings that are relevant to resolving Bailey's instant claims.

document his involvement and the falsity of his charges as unimportant or manipulative." (*Id.*

¶ 30.) Additionally, he avers that Jennifer Brown has

> (a) ignored or minimized evidence that criminal charges were dismissed;
> (b) disregarded [Bailey's] documentation of Mother's alcohol use, instability, and ignoring of court-ordered boundaries; and
> (c) advocated restrictions on Plaintiff's visitation that bear no proportionate relationship to any proven risk, but that conveniently reinforce Mother's attempt to marginalize him.

(*Id.* ¶ 31.) Alleging that Jennifer Brown has "entanglements with local offices and practitioners aligned with Mother" who harbor "racialized presumptions in this 'small town,'" Bailey believes that she has continued to act with prejudice against him. (*Id.* ¶¶ 32–33.)

Similarly, Bailey alleges that Judge Ritchie has displayed "overt and implicit bias" against him, including

> (a) accepting Mother's uncorroborated claims at face value while scrutinizing [Bailey's] assertions with suspicion;
> (b) making comments suggesting [Bailey] is inherently problematic or dangerous, including repeating Mother's claims that [Bailey] "beat her until she had to play dead," despite the absence of credible evidence and despite [Bailey's] denial;
> (c) reacting negatively to [Bailey's] use of technology and legal research (including assistance from artificial intelligence) in preparing his filings, treating these efforts as improper rather than as evidence of diligence; and
> (d) advising [Bailey] that "he needs an attorney to put [his] stuff in," effectively signaling that *pro se* filing will not be considered, in direct tension with his constitutional right to self-representation.

(*Id.* ¶ 34.)

Bailey alleges that the DCSE, "under the direction and policy leadership of [Alana Brown]" and acting in concert with other Defendants, has pursued "enforcement actions and

- 3 -

the threat of contempt . . . to punish him for challenging Mother's narratives and for insisting upon more robust parenting time." (*Id.* ¶¶ 37, 39.) Specifically, Bailey alleges that the DCSE has undertaken enforcement efforts against him without considering "the retaliatory context in which the support orders arose," his ability to pay child support and attorney's fees, and "the fact that Mother has benefited materially from [Bailey's] past support and from retaining control of the child[.]" (*Id.* ¶ 38.)

Finally, Bailey alleges that "his race has been a motivating factor" in the actions described above, adding that he "has repeatedly observed that white litigants in the same courthouse are treated with more patience, more presumption of good faith, and more willingness to credit their testimony, while Black fathers are presumed to be 'deadbeats' or abusers." (*Id.* ¶¶ 40, 41.) Bailey alleges that, because of Defendants' actions, he has suffered a damaged relationship with his son, less time with his son, a tarnished reputation, emotional distress, stigma, and "economic strain." (*Id.* ¶¶ 43, 44.)

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e), which governs *in forma pauperis* proceedings, the court has a duty to screen initial filings. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656–57 (4th Cir. 2006). When screening, the court should liberally construe the filings of *pro se* litigants, using a "less stringent standard[] than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But even a *pro se* complainant must still state a plausible claim for relief, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and the court must dismiss a case "at any time" if the court determines that the complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

The standards for reviewing a complaint for dismissal under § 1915(e)(2)(B)(ii) are the same as those that apply when a defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(6)—failure to state a claim on which relief may be granted.[2] *See De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). Thus, in reviewing a complaint under this statute, the court must accept all well-pleaded factual allegations as true and view the complaint in the light most favorable to the plaintiff. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Federal courts also "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Melton v. Naumann*, No. 25-

---

[2] A complaint is also subject to summary dismissal if it is determined to be "frivolous or malicious," 28 U.S.C § 1915(e)(2)(B)(i), or "seeks monetary relief against a defendant who is immune from such relief," *id.* § 1915(e)(2)(B)(iii). As noted below, some of the named defendants are protected by absolute immunity, and thus the claims against them are subject to dismissal under § 1915(e)(2)(B)(iii).

3343-BAH, 2025 WL 2938362, at *2 (D. Md. Oct. 16, 2025) (granting motion for leave to proceed *in forma pauperis* but dismissing complaint due to lack of subject-matter jurisdiction).

### III. DISCUSSION

Because the court finds that Bailey's application to proceed *in forma pauperis* satisfies the necessary standard, *see* 28 U.S.C. § 1915(a), the court will grant his motion. But § 1915(e) requires a court to screen a plaintiff's initial filing for plausibility and subject-matter jurisdiction. 28 U.S.C. § 1915(e). Therefore, the court will evaluate Bailey's claims in the following order: (1) the § 1983 claims against Judge Ritchie, Jennifer Brown, and Mother; (2) the § 1983 claim against Alana Brown; (3) the § 1985 claim against all Defendants; and (4) the *Monell* claim against Rockingham County.

A. <u>Counts I–III: Judge Ritchie, Jennifer Brown, and Mother Under § 1983</u>

Each of Bailey's § 1983 claims fail against Judge Ritchie, Jennifer Brown, and Mother. At the threshold, Bailey fails to state a valid § 1983 claim against Judge Ritchie because he is protected by absolute judicial immunity. *Clay v. Osteen*, No. 1:10cv399, 2010 WL 4116882, at *3 (M.D.N.C. Oct. 19, 2020) ("[C]laims of judicial immunity are generally reviewed under Fed. R. Civ. P. 12(b)(6)[.]").

The doctrine of judicial immunity protects judges—state and federal—from § 1983 suits seeking both damages and injunctive relief. *See DeBelardino v. Miyares*, No. 2:23-cv-225, 2024 WL 1466811, at *5 (E.D. Va. Mar. 4, 2024) (listing cases); *Rhoe v. Kunz*, No. GJH-17-3757, 2018 WL 6423897, at *5 (D. Md. Dec. 4, 2018) ("Additionally, this Court lacks jurisdiction over the Defendant Circuit Court and the Defendant judges because of absolute judicial immunity. '[I]t is a general principle of the highest importance to the proper

administration of justice that a judicial officer, in exercising authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1971)) (brackets in original)). The protection of this doctrine lapses only when a judge performs a nonjudicial action (or "actions not taken in the judge's judicial capacity"[3]), or when she acts within her judicial role but lacks the jurisdiction to do so. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). In all other circumstances, judges are entitled to judicial immunity so they may "exercise discretion vigorously and effectively, without apprehension that they will be subjected to burdensome and vexatious litigation." *Lesane v. Spencer*, No. 3:09-cv-012, 2009 WL 4730716, at *2 (E.D. Va. Dec. 8, 2009).

In a similar vein, guardians *ad litem* in custody cases are afforded quasi-judicial immunity from § 1983 actions while acting as an agent of the judiciary, even if they engage in "misfeasance of their duties." *Fleming v. Asbill*, 42 F.3d 886, 889 (4th Cir. 1994) ("A guardian *ad litem* must . . . be able to function without the worry of possible later harassment and intimidation from dissatisfied parents. Consequently, a grant of absolute immunity would be appropriate. A failure to grant immunity would hamper the duties of a guardian *ad litem* in his role as advocate for the child in judicial proceedings." (citing *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984)) (emphasis added)); *see also Braun v. Braun*, No. 3:22-cv-00357-RJC-DCK, 2023 WL 3236906, at *11 (W.D.N.C. May 3, 2023) (citing *Fleming* with approval and granting absolute immunity to guardian *ad litem*). Therefore, where plaintiffs' allegations fail to

---

[3] "A judicial function" is determined by "whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). There is no doubt that, in ruling on the matters before the court, Judge Ritchie was exercising judicial functions.

overcome the barrier of judicial immunity or quasi-judicial immunity, courts must dismiss the claim. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *Murphy v. Ross*, No. 3:14cv870, 2015 WL 1787351, at *4 (E.D. Va. Apr. 15, 2015).

Here, Judge Ritchie and the court-appointed guardian *ad litem*, Jennifer Brown,[4] are entitled to judicial and quasi-judicial immunity from Bailey's § 1983 suit. (*See* Compl. ¶¶ 14, 16.) First, Bailey has alleged that Judge Ritchie's alleged misconduct occurred while he was presiding over the child-custody proceedings. (*See id.* ¶¶ 34–35.) From these allegations, there is no doubt that Judge Ritchie was acting in his judicial capacity in "a function normally performed by a judge," or that he had subject-matter jurisdiction over the case. *See Stump*, 435 U.S. at 362 (discussing "judicial acts"); Va. Code Ann. § 16.1-241 (granting exclusive original jurisdiction over matters involving "custody, visitation, support, control, or disposition of a child" to the juvenile and domestic relations district courts). Judge Ritchie, therefore, is shielded from Bailey's claims by judicial immunity. As for Jennifer Brown, her alleged wrongdoing took place solely in her role as guardian *ad litem*—an actor in the judicial process.[5]

---

[4] Bailey also asserts a § 1983 claim against Jennifer Brown in her individual capacity. "Personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his or her individual capacity[,]" and without allegations establishing a defendant's personal actions contributing to a plaintiff's injury, the claim will fail. *Herrera v. Finan*, 176 F. Supp. 3d 549, 568 (D.S.C. 2016) (citing *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001)). Here, Bailey's allegations concern only Jennifer Brown's actions taken in her role as the guardian *ad litem*. (*See generally* Compl.) Similarly, Bailey sues Alana Brown in her individual capacity as well, though his allegations concern her alleged wrongdoing in her professional capacity. (*Id.*) Bailey, therefore, has not stated a claim against these Defendants in their individual capacities.

[5] Further, the bulk of Bailey's allegations against Jennifer Brown concern her failure to be "a neutral advocate for the child's best interests," her "open hostility" towards Bailey, and her potential "divided loyalt[ies]." (Compl. ¶¶ 30, 32, 33.) While these allegations, if true, may raise ethical considerations, they do not form the basis for a § 1983 action. *See Laws v. Priority Tr. Servs. N. Carolina, LLC*, 375 F. App'x 345, 348 (4th Cir. 2010) (affirming district court's conclusion that "the complaint did not plead . . . a violation of anything other than the North Carolina Rules of Professional Conduct, which . . . cannot serve as a basis for civil liability in North Carolina").

(*See* Compl. ¶¶ 29–33.) Jennifer Brown is also immune from this § 1983 action, and the court will dismiss all § 1983 claims against her. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *Fleming,* 42 F.3d at 889.

Bailey's claims also fail against Mother, because a plaintiff "may only lodge due process claims under § 1983 against state actors."[6] *Braun*, 2023 WL 3236906, at *5. A private party may be considered a state actor for the purposes of § 1983 in limited scenarios, but plaintiffs face a strict pleading standard to allege that the defendant "may fairly be said to be a state actor . . . . [and] has acted together with or has obtained significant aid from state officials" *Id.* (quoting *Gregg v. Ham*, 678 F.3d 333, 340 (4th Cir. 2012) (citations omitted)). The key inquiry is whether "there is such a close nexus between the State and the challenged action," such as when the private actor has exercised a traditionally public function or when "the state's engagement or encouragement is so significant that 'the choice must in law be deemed to be that of the State.'" *Braun*, 2023 WL 3236906, at *5–6 (first quoting *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001), then quoting *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 115 (4th Cir. 2022) (citation omitted)). But a private party's mere dissemination of information to state actors—even if demonstrably false—does not elevate them to the level of quasi-state actors for the purposes of § 1983 liability. *See Cruey v. Huff*, No. 7:09-cv-000516, 2010 U.S. Dist. LEXIS 118374, at *11 (W.D. Va. Nov. 8, 2010) ("[C]ourts have held that providing information to the state and pressing for state action against an individual, without more,

---

[6] Bailey also alleges a § 1983 claim for malicious prosecution against "Joint State Actors." (*See* Compl., Count IV.) Because Bailey has not specifically identified these individuals, the court cannot assess the validity of the claims against them, and they will be dismissed as well.

cannot suffice to make a private entity liable under section 1983 as a state actor." (quoting *Manax v. McNamara*, 842 F.2d 808, 813 (5th Cir. 1988)) (internal quotations omitted)).

None of Bailey's allegations regarding Mother, taken as true, would establish that she is a state actor subject to § 1983 liability. Bailey admits as much, stating that Mother "is sued in her individual capacity as a private actor[.]" (Compl. ¶ 20.) At most, Bailey alleges that Mother "deliberately invoked state power through false reports and strategic misuse of the criminal and family-court systems, thereby subjecting her to § 1983 liability as a willful participant in joint action with the State." (*Id.* ¶ 50; *see also* ¶ 24 ("Mother began to manufacture incidents and accusations designed to portray him as dangerous, violent, or unstable, despite the lack of objective evidence . . . [or a] history of substantiated abuse."); ¶ 25 (alleging that Mother instigated 15 criminal charges "directly or indirectly" against Bailey).) This allegation sounds only in unilateral action on Mother's part. The Complaint also lacks any allegations that she was delegated a role from the Commonwealth, that she received aid or encouragement from this government entity, or that her alleged wrongdoing is "fairly attributable" to the Commonwealth. *Braun*, 2023 WL 3236906, at *5–6. At best, the allegations establish that Mother provided information to the state actors, which they found persuasive. But even if Mother's reports were false, this action does not subject her to § 1983 liability. *See Cruey*, 2010 U.S. Dist. LEXIS 118374, at *11; *see also Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989) ("[M]erely complaining to the police does not convert a private actor into a state actor."). In the absence of the required nexus between Mother and the state actors, the court will dismiss all § 1983 claims against Mother.

B. <u>Counts I–III: Alana Brown Under § 1983</u>

In Counts I–III of the Complaint, Bailey asserts that Alana Brown, as the Director of the DCSE, has violated his constitutional rights to substantive and procedural due process and equal protection. (*See* Compl. ¶¶ 45–70.) Bailey's allegations are insufficient to state a claim against her.

"A plaintiff asserting a § 1983 substantive due process claim must allege both the deprivation of his life, liberty[,] or property interest by a state actor, and the deprivation of this interest was 'arbitrary in the constitutional sense.'" *Callahan v. N. Carolina Dep't Pub. Safety*, 18 F.4th 142, 145 (4th Cir. 2021) (citation omitted). "To establish a procedural due process violation under [§] 1983, a plaintiff must show (1) that he has been deprived of a cognizable liberty interest and (2) that such deprivation occurred without adequate procedural protections. . . . At a minimum, procedural due process requires 'fair notice' of impending governmental action and 'an opportunity to be heard.'"[7] *Norris v. City of Asheville*, 721 F. Supp. 3d 404, 413 (W.D.N.C. 2024) (first citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011), then quoting *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 146 (4th Cir. 2014)). And finally,

> [t]o succeed on an equal protection claim, a plaintiff must . . . demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional purposeful discrimination. . . . While a

---

[7] Bailey cannot state a procedural due process claim because he has not alleged any violations of his right to notice and an opportunity to be heard. "At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard[.]" *Snider Int'l Corp. v. Town of Forest Heights, Maryland*, 739 F.3d 140, 146 (4th Cir. 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). In fact, the Complaint makes it apparent that he received notice of and was present at the child custody, enforcement, and contempt proceedings. That the state court cast doubt on the veracity of Bailey's court filings—that is, the court suspected the use of generative artificial intelligence ("AI") based on citations to nonexistent authorities (*see* ECF No. 3, Attach. 1 at 922–25)—does not constitute a procedural due process violation, but rather reflects a serious concern that AI jeopardizes the integrity of the judicial system. *See Iovino v. Michael Stapleton Assocs.*, No. 5:21-cv-00064, 2024 WL 3520170, at *7 (W.D. Va. July 24, 2024).

> similarly situated comparator is not an absolute requirement to succeed on an Equal Protection claim, . . . [p]roof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause of the Fourteenth Amendment.

*Borkowski v. Baltimore County*, 492 F. Supp. 3d 454, 471 (D. Md. 2020) (cleaned up).

Despite his various allegations in support of each of his claims, Bailey fails to put forward any specific, non-conclusory allegations against Alana Brown to sufficiently allege violations of his right to substantive due process, procedural due process, or equal protection. In fact, the scant allegations[8] against Alana Brown take issue not with her direct actions, but with her alleged *supervisory* shortcomings. (*See* Compl. ¶ 36 (alleging that "[t]he Division of Child Support Enforcement, under the direction and policy leadership of Defendant Brown, has proceeded against Plaintiff in a manner that is disproportionate, punitive, and coordinated with the adverse custody rulings"); ¶¶ 37, 38, 39 41 (alleging that under Defendant Brown's leadership, the Division's enforcement actions are threatening, coercive, and improper and have "transform[ed] a family-law dispute into a civil-rights problem").) Government officials may be liable under § 1983 "only for their personal wrongdoing or supervisory actions that violated constitutional norms." *Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022); *see also Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). To establish supervisory liability under § 1983, a plaintiff must allege facts that, if true, would establish

---

[8] Bailey also alleges that "Brown has ongoing professional relationships and entanglements with local offices and practitioners." (Compl. ¶ 32.) While Bailey fails to specify whether he refers to Jennifer Brown or Alana Brown, the court construes this as an allegation against the former, given that the allegation is bookended by other allegations against Jennifer Brown and is lodged in a section entitled "*Guardian ad Litem* Bias and Conflicts." (*See id.* ¶¶ 29–33.)

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Plaintiffs face a high bar under *Shaw*. As to the first factor, a supervisor's "mere knowledge" of a supervisee's wrongdoing is not sufficient to open them to liability, *Iqbal,* 556 U.S. at 677; rather, to establish a "pervasive and unreasonable risk of constitutional injury," the plaintiff must allege that the supervisor knew of "widespread" examples of unconstitutional behavior, *Shaw*, 13 F.3d at 799. Under the second factor, a plaintiff must establish the supervisor's "continued inaction in the face of documented widespread abuses"; isolated incidents of supervisees' wrongdoing will not suffice. *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). Third, a plaintiff must establish proximate cause between the defendant-supervisor's actions and the plaintiff's eventual harm. *See id.* at 376.

Here, Bailey does not clear the first bar of the *Shaw* test. At most, he states that Alana Brown was the head of the DCSE during the relevant period. (*See, e.g.*, Compl. ¶ 36.) He has not alleged, however, that as the leader of the DCSE, Alana Brown was aware of "widespread" violations of Bailey's rights—or the rights of African-American fathers generally—or that she exhibited "continued inaction in the face of documented widespread abuses." *See Slakan*, 737 F.2d at 373. Even if he were able to overcome these hurdles and successfully state a claim against Alana Brown, his underlying claims are directed towards the enforcement actions of the DCSE and ongoing state-level proceedings, which this court must refrain from policing.

*See Cristia v. Newell*, No. 6:09-cv-01311, 2011 WL 830112, at *8 (S.D.W. Va. Feb. 9, 2011) ("It is inappropriate for federal courts to interfere in state and local law enforcement actions, absent extraordinary circumstances." (citing *Younger v. Harris*, 401 U.S. 37, 43–45 (1971))), *R.&R. adopted by*, 2011 WL 833353 (S.D.W. Va. Mar. 3, 2011). Therefore, the court will dismiss Bailey's § 1983 claims against Alana Brown.

### C. Count V: Jennifer Brown, Alana Brown, Rockingham County, and Mother Under § 1985

Bailey also fails to state a claim of civil conspiracy under 42 U.S.C. § 1985. To state a claim under § 1985(3), a plaintiff must plausibly allege:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). "In order to prove a section 1985 conspiracy, a claimant must show an agreement or a meeting of the minds by defendants to violate the claimant's constitutional rights." *Facey v. Dae Sung Corp.*, 992 F. Supp. 3d 536, 541 (D. Md. 2014). "This is a 'relatively stringent standard,' and the Fourth Circuit 'has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy.'" *Borkowski*, 492 F. Supp. 3d at 483–84 (rejecting § 1985(2) claim because plaintiffs' complaint alleging that the defendants "employed facially discriminatory customs and policy . . . and treated one class of victims differently from others" based on discriminatory motives was a "shotgun[-]style pleading" and did not "rise to the level of concreteness required to meet the

"'relatively stringent' standard set by the Fourth Circuit in *Poe* for alleging a conspiracy" (quoting *Simmons*, 47 F.3d at 1377)).

Bailey's allegations do not meet the "relatively stringent standard" to state a claim of civil conspiracy under § 1985(3). *Id.* at 484. For one, Bailey's allegations are directed primarily towards Jennifer Brown and Mother, with only a vague reference to Rockingham County officials and Alana Brown involved in a "meeting of the minds." *Facey*, 992 F. Supp. 3d at 541. The remaining allegations against Jennifer Brown and Mother are similarly conclusory and speculative. That Jennifer Brown "adopt[ed] . . . Mother's narrative" in custody and enforcement actions falls woefully short of establishing that Jennifer Brown and Mother harbored a discriminatory motive or communicated to deprive Bailey of his parental rights. (*See* Compl. ¶¶ 80–82.) *See also A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (dismissing § 1985(3) conspiracy claim because plaintiff failed to establish any communications between the defendants and merely stated that there was generally a meeting of the minds). For this reason, the court will dismiss the § 1985 claim.

    D. <u>Count VI: Rockingham County</u>

In support of his *Monell* claim against Rockingham County, Bailey alleges that Rockingham County implemented policies that treat Black fathers differently from white fathers *and* condoned racially discriminatory customs in its J&DR proceedings. (*See* Compl. ¶¶ 40, 41, 85–88.) The Complaint only formulaically recites the elements of a *Monell* claim and provides scant factual support for the required elements. Bailey has therefore failed to state a claim.

In *Monell v. Department of Social Services of the City of New York*, the United States Supreme Court held that while local governmental units cannot be held liable under a theory of *respondeat superior* in § 1983 claims, they nevertheless may be held responsible when the unit's policy or custom inflicts a constitutional deprivation upon a plaintiff. 436 U.S. 658, 694 (1978). In other words, a municipality is "liable only for its own illegal acts," rather than those of their employees. *Owens v. Balt. City State's Att'y's Off.*, 767 F.3d 379, 402 (4th Cir. 2014).

To state a claim for *Monell* liability, a plaintiff must "plausibly allege that his constitutional harm stems from the acts of a municipal employee taken in furtherance of some municipal policy or custom." *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 308 (D. Md. 2020) (internal quotations omitted) (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984)). A plaintiff may establish the existence of a "policy or custom," with the requisite particularity, in one of four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Johnson*, 452 F. Supp. 3d at 308 (quoting *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)); *see also Owens*, 767 F.3d at 402–03 (holding that plaintiff sufficiently alleged a widespread practice of officers knowingly suppressing exculpatory evidence in criminal prosecutions on multiple occasions, and his allegations, though brief, made out a plausible claim of an "impermissible custom"); *Washington v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 535 (D. Md. 2020) (determining that complaint survived the 12(b)(6) stage because it identified three instances when police

department's failure to train officers to disclose *Brady* evidence and failure to modify Brady training program led to wrongful convictions); *Harris v. Piedmont Reg'l Jail Auth.*, No. 3:24cv799, 2025 WL 2581839, at *10 (E.D. Va. Sep. 5, 2025) (holding that merely stating that "it was the custom, practice or policy of defendant-jail to inadequately train their employees . . . [or] failing to adequately discourage constitutional violations on the part of their employees" was a conclusory, formulaic recitation of the elements of a *Monell* claim and could not survive a motion to dismiss).

At the threshold, Bailey has failed to identify an official Rockingham County policy causing his injuries and has only formulaically recited that the County's failure to train contributed to them. (*See* Compl. ¶¶ 85, 87.) *See also Twombly*, 550 U.S. at 555; *Owens*, 767 F.3d at 402–03. He therefore fails to state a *Monell* claim on these grounds.

Moreover, most of Bailey's allegations describe Rockingham County's "tolera[nce] and perpetuat[ion]" of customs that result in allegedly discriminatory decisions in child-custody disputes. (Compl. ¶ 86.) From these allegations, the court regards Bailey's *Monell* claim as one premised on a theory of "condonation," or the "failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct." *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). To bring a viable *Monell* claim under the condonation theory, a plaintiff must establish "a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." *Owens*, 767 F.3d at 402; *see Newhard v. Borders*, 649 F. Supp. 2d 440, 446 (W.D. Va. 2009) (dismissing complaint for lack of facts that would "support[ed] a conclusion that the Town's

governing officials were actually or constructively aware of persistent and widespread constitutional deprivations by Town officers."). Plaintiffs face a high bar in establishing deliberate indifference and, generally, must allege patterns of a municipality condoning constitutional violations, save for obvious and extreme examples of deliberate indifference. *See Lane v. Fayette Cnty. Comm'n*, No. 2:18-cv-01223, 2019 WL4780815, at *3 (S.D.W. Va. Sep. 30, 2019).

Bailey's allegations fall well short of this exacting standard. His allegations against the County, with respect to its "tolera[nce] and perpetua[tion]" of unjust customs, are conclusory, speculative,[9] and fail to paint a plausible picture that Rockingham County knew of and condoned unconstitutional practices.[10] (Compl. ¶¶ 41, 86 (alleging that Rockingham County tolerates "racially based assumptions about Black fathers . . . in decision-making," relies on "dismissed criminal charges . . . as valid indicators of danger or unfitness," and does not afford "equal procedural respect" to "Black *pro se* fathers"). At bottom, Bailey does not "point[] to any instances of such misconduct other than the instant case," and therefore cannot establish that Rockingham County "was aware of such conduct or if it made a deliberate choice" to condone it. *Lane*, 2019 WL4780815, at *3. Therefore, Bailey's final claim will be dismissed.

---

[9] Insofar as Bailey alleges that other Black fathers are treated similarly in child-custody proceedings, the court is at a loss to see how he can make such a statement, given that matters involving minor children are not open to the public. *See, e.g.*, Va. Code Ann. §§ 16.1-302(C) ("The general public shall be excluded from all juvenile court hearings and only such persons admitted as the judge shall deem proper."); 19.2-266 (prohibiting media coverage in "child custody proceedings"). Nevertheless, as part of its screening obligation under 28 U.S.C. § 1915, the court accepts Bailey's allegations as true.

[10] Bailey's only semi-specific allegation is that he "has repeatedly observed that white litigants in the same courthouse are treated with more patience, more presumption of good faith, and more willingness to credit their testimony, while Black fathers are presumed to be 'deadbeats' or abusers unless they can overcome that starting point." (Compl. ¶ 40.) This allegation is troublesome, *if true*, but it is not specifically directed towards the County.

## IV. CONCLUSION

For the reasons discussed above, the court will grant Bailey's application to proceed *in forma pauperis*, but it will dismiss his Complaint.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 27th day of January, 2026.

/s/ *Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE